*Exhibit A*



Select Language ▼

Powered by Google **Translate**

# Civil Court Case Information – Case History

## Case Information

| | | | |
|---|---|---|---|
| Case Number: | CV2020-054116 | Judge: | Russell, Andrew |
| File Date: | 6/29/2020 | Location: | Northeast |
| Case Type: | Civil | | |

## Party Information

| Party Name | Relationship | Sex | Attorney |
|---|---|---|---|
| Peter Strojnik | Plaintiff | Male | Pro Per |
| Xenia Hotels And Resorts Inc | Defendant | | Pro Per |
| X H R Scottsdale Ranch L L C | Defendant | | Pro Per |
| X H R Phoenix Palms L L C | Defendant | | Pro Per |

## Case Documents

| Filing Date | Description | Docket Date | Filing Party |
|---|---|---|---|
| 7/1/2020 | SUM - Summons | 7/2/2020 | Plaintiff(1) |
| 7/1/2020 | SUM - Summons | 7/2/2020 | Plaintiff(1) |
| 7/1/2020 | AFS - Affidavit Of Service | 7/6/2020 | |
| **NOTE:** XHR SCOTTSDALE RANCH LLC | | | |
| 7/1/2020 | AFS - Affidavit Of Service | 7/6/2020 | |
| **NOTE:** XHR PHOENIX PALMS LLC | | | |
| 6/29/2020 | COM - Complaint | 6/29/2020 | Plaintiff(1) |
| 6/29/2020 | CCN - Cert Arbitration – Not Subject | 6/29/2020 | Plaintiff(1) |
| 6/29/2020 | CSH - Coversheet | 6/29/2020 | Plaintiff(1) |

## Case Calendar

**There are no calendar events on file**

## Judgments

**There are no judgments on file**

 CT Corporation

**Service of Process Transmittal**
06/30/2020
CT Log Number 537872358

TO: Taylor Kessel, SVP & General Counsel
Xenia Hotels & Resorts, Inc.
200 S Orange Ave Ste 2700
Orlando, FL 32801-3446

RE: **Process Served in Arizona**

FOR: XHR Phoenix Palms LLC  (Domestic State: DE)

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

| | |
|---|---|
| **TITLE OF ACTION:** | Peter Strojnik, Pltf. vs. Xenia Hotels and Resorts, Inc., etc., et al., Dfts. // To: XHR Phoenix Palms LLC |
| **DOCUMENT(S) SERVED:** | - |
| **COURT/AGENCY:** | None Specified<br>Case # CV2020054116 |
| **ON WHOM PROCESS WAS SERVED:** | C T Corporation System, Phoenix, AZ |
| **DATE AND HOUR OF SERVICE:** | By Process Server on 06/30/2020 at 14:05 |
| **JURISDICTION SERVED :** | Arizona |
| **APPEARANCE OR ANSWER DUE:** | None Specified |
| **ATTORNEY(S) / SENDER(S):** | None Specified |
| **REMARKS:** | The documents received have been modified to reflect the name of the entity being served. |
| **ACTION ITEMS:** | CT has retained the current log, Retain Date: 06/30/2020, Expected Purge Date: 07/05/2020<br><br>Image SOP<br><br>Email Notification,  Taylor Kessel  tkessel@xeniareit.com<br><br>Email Notification,  Matt Devine  MDevine@XeniaReit.com |
| **SIGNED:**<br>**ADDRESS:** | C T Corporation System<br>208 S La Salle St Ste 814<br>Chicago, IL 60604-1101 |
| **For Questions:** | 866-203-1500<br>DealTeam@wolterskluwer.com |

Information displayed on this transmittal is for CT Corporation's record keeping purposes only and is provided to the recipient for quick reference. This information does not constitute a legal opinion as to the nature of action, the amount of damages, the answer date, or any information contained in the documents themselves. Recipient is responsible for interpreting said documents and for taking appropriate action. Signatures on certified mail receipts confirm receipt of package only, not contents.

RDH
6/30/20
1:46

1  Peter Strojnik,
2  7847 N. Central Avenue
   Phoenix, Arizona 85020
3  Telephone:  (602) 524-6602
   ps@strojnik.com
4

5  ## IN THE SUPERIOR COURT OF THE STATE OF ARIZONA
   ## IN AND FOR THE COUNTY OF MARICOPA
6

7  Peter Strojnik,                          Case No: CV2020-054116

8                              Plaintiff,        **SUMMONS**

9                    vs.                    If you would like legal advice from a lawyer,
                                            contact the Lawyer Referral Service at
10 Xenia Hotels and Resorts, Inc. a foreign
   corporation; XHR Phoenix Palms, LLC dba        **602-257-4434**
11 Royal Palms Hotel; XHR Scottsdale Ranch,           or
   LLC dba Hyatt Regency Scottsdale Resort     **www.lawyerfinders.org.**
12 and Spa at Gainey Rach,
                              Defendants.       Sponsored by the
13                                          Maricopa County Bar Association

14
   +------------------------------------------------------------------+
15 | **WARNING: This is an official document from the court that affects your rights. Read this carefully.** |
   | **If you do not understand it, contact a lawyer for help.** |
16 +------------------------------------------------------------------+

17 **FROM THE STATE OF ARIZONA TO:  (1) Xenia Hotels and Resorts, Inc., (2) XHR Phoenix
   Palms, LLC and (3) XHR Scottsdale Ranch, LLC**

18 1.  A lawsuit has been filed against you. A copy of the lawsuit and other court papers are
       served on you with this *"Summons"*.
19

20 2.  If you do not want a judgment or order taken against you without your input, you must
       file an *"Answer"* or a *"Response"* in writing with the court, and pay the filing fee. If you
21     do not file an *"Answer"* or *"Response"* the other party may be given the relief
       requested in his/her Petition or Complaint. To file your *"Answer"* or *"Response"* take,
22     or send, the *"Answer"* or *"Response"* to the:

23       •  **Office of the Clerk of the Superior Court, 201 West Jefferson Street, Phoenix,
          Arizona 85003-2205 *OR***
24       •  **Office of the Clerk of the Superior Court, 18380 North 40th Street, Phoenix,
          Arizona 85032 *OR***
25       •  **Office of the Clerk of Superior Court, 222 East Javelina Avenue, Mesa, Arizona
          85210-6201 *OR***
26       •  **Office of the Clerk of Superior Court, 14264 West Tierra Buena Lane, Surprise,
          Arizona, 85374.**
27
   **Mail a copy of your *"Response"* or *"Answer"* to the other party at the address listed
28 on the top of this Summons.**

1

2
3. If this *"Summons"* and the other court papers were served on you by a registered process server or the Sheriff, within the State of Arizona, your *"Response"* or *"Answer"* must be filed within TWENTY (20) CALENDAR DAYS from the date you were served, not counting the day you were served. If this *"Summons"* and the other papers were served on you by a registered process server or the Sheriff outside the State of Arizona, your Response must be filed within THIRTY (30) CALENDAR DAYS from the date you were served, not counting the day you were served. Service by a registered process server or the Sheriff is complete when made. Service by Publication is complete thirty (30) days after the date of the first publication.

3

4

5

6

7
4. You can get a copy of the court papers filed in this case from the Petitioner at the address listed at the top of the preceding page, from the Clerk of the Superior Court's Customer Service Center at:

8

9
- 601 West Jackson, Phoenix, Arizona 85003
- 18380 North 40th Street, Phoenix, Arizona 85032
- 222 East Javelina Avenue, Mesa, Arizona 85210
- 14264 West Tierra Buena Lane, Surprise, Arizona 85374

10

11

12
5. Requests for reasonable accommodation for persons with disabilities must be made to the division assigned to the case by the party needing accommodation or his/her counsel at least three (3) judicial days in advance of a scheduled proceeding.

13

14
6. Requests for an interpreter for persons with limited English proficiency must be made to the division assigned to the case by the party needing the interpreter and/or translator or his/her counsel at least ten (10) judicial days in advance of a scheduled court proceeding.

15

16

17
SIGNED AND SEALED this

18
By_____

19
Deputy Clerk



Clerk of the Superior Court

JUN 2 9 2020

CLERK OF THE SUPERIOR COURT
K. MELZER
DEPUTY CLERK

20

21

22

23

24

25

26

27

28

2





JUN 2 9 2020

CLERK OF THE SUPERIOR COURT
K. MELZER
DEPUTY CLERK

1  Peter Strojnik,
2  7847 N. Central Avenue
   Phoenix, Arizona 85020
3  Telephone:  (602) 524-6602
   ps@strojnik.com
4

**IN THE SUPERIOR COURT OF THE STATE OF ARIZONA**
5
**IN AND FOR THE COUNTY OF MARICOPA**
6

7·                                              Case No:   CV2020-054116

8  Peter Strojnik,                              **CERTIFICATE OF ARBITRATION**

9                                    Plaintiff,

10                 vs.

11  Xenia Hotels and Resorts, Inc. a foreign
    corporation; XHR Phoenix Palms, LLC dba
12  Royal Palms Hotel; XHR Scottsdale Ranch,
    LLC dba Hyatt Regency Scottsdale Resort
13  and Spa at Gainey Rach,
14
15                               Defendants.

16        Plaintiff certifies that the above cause is not subject to compulsory arbitration.

17        RESPECTFULLY SUBMITTED this 26ᵗʰ day of June, 2020

18                              **PETER STROJNIK**

19

20                              _____
                                Peter Strojnik
21                              Plaintiff

22

23

24

25

26

27

28





JUN 2 9 2020

CLERK OF THE SUPERIOR COURT
K. MELZER
DEPUTY CLERK

Peter Strojnik,
7847 N. Central Avenue
Phoenix, Arizona 85020
Telephone:  (602) 524-6602
ps@strojnik.com

**IN THE SUPERIOR COURT OF THE STATE OF ARIZONA**
**IN AND FOR THE COUNTY OF MARICOPA**

CV2020-054116

| | |
|---|---|
| Peter Strojnik, | Case No: |
| Plaintiff, | **COMPLAINT** |
| vs. | 1. **Common Law Fraud** |
| | 2. **Consumer Fraud** |
| Xenia Hotels and Resorts, Inc. a foreign corporation; XHR Phoenix Palms, LLC dba Royal Palms Hotel; XHR Scottsdale Ranch, LLC dba Hyatt Regency Scottsdale Resort and Spa at Gainey Rach, | 3. **Failure to Disclose** |
| | 4. **Fraudulent Concealment** |
| | 5. **Securities Fraud – Federal Law** |
| | 6. **Securities Fraud – State Law** |
| Defendants. | 7. **Americans with Disabilities Act** |
| | 8. **Negligence** |
| | **JURY TRIAL REQUESTED** |

**NATURE OF THE CASE**

1. Xenia Hotels and Resorts, Inc. ("Xenia") is a publicly traded company trading under call number XHR. Xenia owns, directly or through its subsidiaries, 39 hotel properties with 11,533 rooms. Xenia's hotels are "public accommodations" and "places of lodging" as these terms are defined in the Americans with Disabilities Act and implementing regulations, *see* 42 U.S.C. §§12101 *et seq.* and 28 C.F.R. Part 36. To the extent Xenia's Hotels are ADA non-compliant, they are subject to civil rights lawsuits, orders for remediation and, in certain State Jurisdictions, statutory damages and other state based causes of action.

2. Plaintiff Peter Strojnik ("Strojnik"), as a recent purchaser of Xenia's XHR stock. He brings this suit, in part, for Xenia's misrepresentations regarding compliance with the

ADA and Xenia's failures to disclose material information regarding the risk associated with Xenia continued, knowing and discriminatory non-compliance with the ADA. For example, and as more fully developed below, Xenia's 2019 10-K represents that Xenia's properties are in "substantial compliance with the ADA and that we will not be required to make substantial capital expenditures to address the requirements of the ADA", when the fact of the matter is that Xenia's properties are among the worst ADA offenders and the remediation will costs millions of dollars.

3. XHR Phoenix Palms, LLC dba Royal Palms Hotel ("Phoenix Palms") and XHR Scottsdale Ranch, LLC dba Hyatt Regency Scottsdale Resort and Spa at Gainey Rach ("Scottsdale Ranch") are subsidiary properties of Xenia. Both of these properties are consciously ADA non-compliant and illustrate Xenia' general segregationist bias and the materiality of Xenia's disclosures and omissions relating to Strojnik's purchase of its stock.

4. Xenia subsequently, in response to specific questions, refused to provide material information in connection with Strojnik's decision to buy more XHR stock, sell the existing shares of XHR stock, or retain the currently owned XHR stock.

5. Xenia has failed to respond to Strojnik's specific inquiry regarding accessibility elements in Xenia's two Arizona properties, Royal Palms and Scottsdale Ranch and Xenia's four California properties, Andaz San Diego, Park Hyatt Aviara Resort, Kimpton Canary Hotel Santa Barbara, and Marriott Napa Valley Hotel & Spa in violation of 28 C.F.R. 36.302(e)(1)(ii).

6. Strojnik alleges that Xenia's known requirement for compliance with the Americans With Disabilities Act ("ADA") and its known architectural and disclosure violations of the ADA violations at its properties subject it to significant risk which would be considered material by an average investor.

7. Strojnik further alleges that Royal Palms and Scottsdale Ranch are Xenia controlled subsidiaries that violate Strojnik's rights to full and equal access under the ADA.

**THE PARTIES**

8. Strojnik is an immigrant, retired veteran and a disabled person as defined by the 2008 ADA Amendment Act, 28 C.F.R. 36.105. Plaintiff is an ADA Tester and the owner of 10 shares of Xenia stock.

9. Strojnik is and, at all times relevant hereto has been, legally disabled by virtue of (a) prostate cancer, (2) renal cancer, (3) severe right-sided neural foraminal stenosis with symptoms of femoral neuropathy, (4) missing part of a limb (prosthetic right knee), (5) physical impairment in arms and shoulders and (6) pleurisy. Plaintiff is disabled under all three definitions of disability pursuant to the 2008 ADA Amendment act and 28 C.F.R. 36.105 that is, (1) having physical impairments, (2) having a history of physical impairments, and (3) being regarded as having a physical impairment.

10. Above described impairments, the history of impairments, and being regarded as having impairments substantially limit, as this term is construed in 28 C.F.R. 36.105(d) and defined in the 2008 ADA Amendment Act, one or more major life activities including, but not limited to, walking, standing, sitting, bending, sleeping, working, performing manual tasks, reaching, grasping, lifting, climbing, kicking, pushing, opening doors, twisting the wrist, shoulder and elbows and working. Plaintiff's impairments, such as a knee prosthesis and the severe right-sided neural foraminal stenosis with symptoms of femoral neuropathy, are to be considered in their unmitigated state[1]. Plaintiff's episodic impairments, as pleurisy, are to be considered as if active[2]. Plaintiff's cancers are of lifetime duration.

11. The following Table 1 indicates the relationship between Plaintiff's ADA disabilities and major life activities:

**RELATION BETWEEN PLAINTIFF'S ADA DISABILITY AND MAJOR LIFE ACTIVITIES**

| DISABILITY | | | | RELATION | |
|---|---|---|---|---|---|
| DESCRIPTION | DISABILITY PRONG | | | MAJOR LIFE ACTIVITY | 28 C.F.R. 36 REFERENCE |
| | Impairment | History Of | Reg'ed As | | |

---

[1] 28 C.F.R. 36.105(d)(viii).
[2] 28 C.F.R. 36.105(d)(iv).

3

| | | | | | |
|---|---|---|---|---|---|
| Prostate Cancer And Genitourinary Impairment | x | x | x | Major Bodily Function (normal cell growth, genitourinary, bladder, reproductive) | (c)(1)(ii) (d)(1)(iv) (d)(1) (v) (d)(1) (vi) (d)(1)(viii) (d)(2)((iii)(F) (e)(1)(2) (f)(1) |
| Renal Cancer | x | x | x | Major Bodily Function (normal cell growth) | (c)(1)(ii) (d)(1)(iv) (d)(1)(v) (d)(1)(vi) (d)(1)(viii) (d)(2)((iii)(F) (e)(1)(2) (f)(1) |
| Severe Right-Sided Neural Foraminal Stenosis With Symptoms Of Femoral Neuropathy | x | x | x | Walking, standing, sitting, bending, sleeping, working, climbing stairs, kicking. | (c)(1)(i) (d)(1)(iv) (d)(1)(v) (d)(1)(vi) (d)(1)(viii) (d)(2)((iii)(D) (e)(1)(2) (f)(1) |
| Degenerative Right Knee | x | x | x | Walking, standing, sitting, bending, sleeping, working, climbing stairs, kicking. | (c)(1)(i) (d)(1)(iv) (d)(1)(v) (d)(1)(vi) (d)(1)(viii) (d)(2)((iii)(D) (e)(1)(2) (f)(1) |
| Limitation On The Use Of Both Shoulders, Elbows And Wrists To Reach And Twist | x | x | x | Performing manual tasks, sleeping, reaching, lifting, writing, working, twisting the wrist, shoulder and elbows, grasping, pushing, opening doors, and working. | (c)(1)(i) (d)(1)(iv) (d)(1)(v) (d)(1)(vi) (d)(1)(viii) (e)(1)(2) (f)(1) |

| Pleurisy | x | x | x | Performing manual tasks, sleeping, walking, reaching, lifting, writing, working. | (c)(1)(i) (d)(1)(iv) (d))1)(v) (d))1)(vi) (d)(2)((iii)(D) (e)(1)(2) (f)(1) |
|---|---|---|---|---|---|

**Table 1**

12. Plaintiff has been declared disabled by the Arizona Department of Transportation and is, therefore "regarded as" being disabled. The disabled placard reproduced in the margin entitles him to preferential parking, stopping and passenger loading / drop of zone areas.



13. In their unmitigated, active state, Plaintiff's impairments require the use of a wheelchair as defined in 28 C.F.R. 36.104.

14. Xenia is a foreign corporation conducting business in the State of Arizona through its subsidiaries, XHR Scottsdale Ranch, LLC, the owner/operator of Hyatt Regency Gainey Ranch located at 7500 E. Doubletree Ranch Rd., Scottsdale, Arizona, and XHR Phoenix Palms, LLC, the owner / operator of the Royal Palms Hotel located at 5200 East Camelback Rd., Phoenix, AZ 85018.

15. Xenia operates as a real estate investment trust ("REIT") for U. S. federal income tax purposes. To qualify as a lodging REIT, the Company cannot operate or manage its hotels. Therefore, the Operating Partnership and its subsidiaries lease the hotel properties to XHR Holding Inc. (collectively with its subsidiaries, "XHR Holding"), the Company's taxable REIT subsidiary ("TRS"), which engages third-party eligible independent operators to manage the hotels.

16. As of December 31, 2019, the Company owned 39 lodging properties with a total of 11,245 rooms.

17. Royal Palms is a hotel located at 5200 East Camelback Rd., Phoenix, AZ 85018.

18. Scottsdale Ranch is a hotel located at 7500 East Doubletree Ranch Rd., Scottsdale, AZ 85258.

5

19. Superior Court has jurisdiction over this case or controversy by virtue of A.R.S. § 12-123. Venue is proper pursuant to A.R.S. § 12-401.

## ALLEGATIONS COMMON TO ALL COUNTS

**A. STROJNIK'S PURCHASE OF XHR STOCK WAS BASED ON XENIA'S MISSTATEMENTS, MISREPRESENTATIONS AND / OR OMISSIONS OF MATERIAL FACTS.**

20. On May 11, 2020, Strojnik purchased 10 shares of XHR stock.

21. Prior to purchase of XHR stock, Plaintiff reviewed xeniareit.com website and certain SEC documents filed by Xenia with the Securities and Exchange Commission.

22. In reviewing Xenia's website, Plaintiff noted that in 2019, Xenia issued a Corporate Responsibility Report.

23. In the "Letter from our CEO" section of the Corporate Responsibility Report, Xenia represented:

    a. "At Xenia Hotels & Resorts, our corporate mission extends beyond the creation of stockholder value to the communities in which we conduct business, as well as the overall environment"; and

    b. There is a "Corporate Responsibility Committee (CRC) with an enhanced focus on operational efficiencies and a structured Environmental, Social, and Governance (ESG) program".

24. But,

    a. Xenia conducts business in travel community, but, contrary to its statement above, its mission does not extend to the disabled travel community; and

    b. Upon information and belief, there is no "Corporate Responsibility Committee (CRC) with an enhanced focus on operational efficiencies and a structured Environmental, Social, and Governance (ESG) program".

25. In the "Our Company" section of the Corporate Responsibility Report, Xenia represented:

6

a.   As of year-end 2019, we owned 39 hotels comprised of 11,245 rooms across 16 states; and

b.

**Who We Are**

- ○   Owner of Uniquely Positioned Luxury and Upper Upscale Hotels and Resorts
- ○   Top 100 Company as recognized by the Orlando Sentinel
- ○   Advocate of AHLA's 5-Star Promise
- ○   Community Service Champion as recognized by the Orlando Sentinel

26. But,

a.   Xenia does not own 39 hotels comprised of 11,245 rooms across 16 states; and

b.   Xenia is not the owner of uniquely positioned luxury and upper upscale hotels and resorts.

27. In the "Corporate Governance" section of the Corporate Responsibility Report, Xenia represented:

# Ethics & Governance Objectives

  Maintain strong corporate governance standards

  Proactively engage with our stakeholders, including our stockholders, employees, third-party managers, suppliers and vendors

  Foster a supportive and inclusive work environment where all associates are empowered to succeed

28. But,

a.   Xenia does not proactively engage with its stockholders.

29. Under the heading "Our Environmental Stewardship Approach" Xenia discloses compliance with the following principles:

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16

**Our Environmental Stewardship Principles**

- Defense of our assets

- Compliance with all applicable laws and governmental regulations

- Review of the portfolio to look for opportunities for environmental stewardship

- Validated investment in the improved performance of our portfolio



17  30. But, Xenia does not comply with all applicable laws and governmental regulations.

18  31. Xenia's 2019 10-K makes the following representations:

19      ***Americans with Disabilities Act***

20      Our hotels must comply with applicable provisions of the Americans with
21      Disabilities Act (the "ADA"), to the extent that such hotels are "public
        accommodations" as defined by the ADA. The ADA may require removal
22      of structural barriers to access by persons with disabilities in certain public
        areas of our hotels where such removal is readily achievable. We believe
23      that our hotels are in substantial compliance with the ADA and that we will
24      not be required to make substantial capital expenditures to address the
        requirements of the ADA. However, non-compliance with the ADA could
25      result in imposition of fines or an award of damages to private litigants. The
26      obligation to make readily achievable accommodations is an ongoing one,
        and we will continue to assess our hotels and to make alterations as
27      appropriate in this respect.

28

***Compliance or failure to comply with the Americans with Disabilities Act and other safety regulations and requirements could result in substantial costs.***

Under the Americans with Disabilities Act of 1990 and the Accessibility Guidelines promulgated thereunder, which we refer to collectively as the ADA, all public accommodations must meet various federal requirements related to access and use by disabled persons. Compliance with the ADA's requirements could require removal of access barriers, and non-compliance could result in the U.S. government imposing fines or in private litigants winning damages. Our hotels also are subject to various federal, state and local regulatory requirements, such as state and local fire and life safety requirements. If we fail to comply with these requirements, we could incur fines or private damage awards. We do not know whether existing requirements will change or whether compliance with future requirements would require significant unanticipated expenditures that would affect our cash flow and results of operations. If we incur substantial costs to comply with the ADA or other safety regulations and requirements, it could materially and adversely affect our revenues and profitability.

32. By adding the statement "[w]e believe that our hotels are in substantial compliance with the ADA and that we will not be required to make substantial capital expenditures to address the requirements of the ADA", Xenia reassured Strojnik and others similarly situated that Xenia had conducted an investigation of the compliance of its Hotels and formed its belief on the basis thereof.

33. Upon information and belief, Xenia has no such belief primarily because its hotels are not in substantial compliance with the ADA and state law civil rights mandates.

34. Upon information and belief, Xenia had no basis for making the statement.

35. Xenia made the statement of its "belief" for the express purpose of misleading purchasers of its stock, as Strojnik, into believing that it had conducted an ADA investigation of its own properties and that the investigation disclosed "substantial compliance" with the ADA.

36. By adding the statement,

"We do not know whether existing requirements will change or whether compliance with future requirements would require significant unanticipated expenditures that would affect our cash flow and results of operations. If we incur substantial costs to comply with the ADA or other safety regulations

9

1    and requirements, it could materially and adversely affect our revenues and
2    profitability",

3    Xenia mislead Strojnik into believing that only if ADA requirements change was there
4    a possibility of material and adverse effect on its revenues and profitability.

5  37. Xenia's 10-K discloses Xenia's knowledge that its properties are not fully compliant
6    with the ADA.  It also discloses that non-compliance may cause material and adverse
7    effect on its revenues and profitability.

8  38. Once Xenia disclosed its own non-compliance with the ADA and the potential for
9    material and adverse effect on its profitability, it incurred a further duty to also disclose
10    whether voluntary compliance with the ADA would reduce the risk of material and
     adverse effect on its revenues and profitability.

11  39. Xenia's misstatements, misrepresentations and/or omissions are hereinafter referred to
12    as "Xenia's Misrepresentations".

13  **B. SCOTTSDALE RANCH'S MISSTATEMENTS, MISREPRESENTATIONS AND / OR**
14     **OMISSIONS.**

15  40. On its website, Scottsdale Ranch makes the following statements of fact:

16    a.

17
**Accessibility**
18  - Wheelchair accessible - may have
    limitations
19  - Wheelchair Accessible bathroom
20  - In room accessibility

21    b.

22
**General Amenities**
23  - Hotel Restaurant
    - Wheelchair accessible parking
24  - Wheelchair-accessible concierge desk
    - Wheelchair-accessible van parking
25  - Wheelchair-accessible registration desk
    - Wheelchair-accessible pool
26  - Wheelchair-accessible meeting
    spaces/business center

27
28  41. But,

a. The statement that [the property] is "wheelchair accessible – may be limitations" is utterly and completely false because (i) the property is not wheelchair accessible and because (ii) there are known, visible and impossible to miss limitations to wheelchair access, all as more fully developed below.

b. The statement that the property has "wheelchair accessible parking" is patently false because the parking stalls, although marked, are not "accessible" by virtue of slope and signage, all as more fully developed below.

42. Scottsdale Ranch' misstatements, misrepresentations and/or omissions are hereinafter referred to as "Scottsdale Ranch Misrepresentations".

C. STROJNIK'S REQUESTS FOR INFORMATION AND XENIA'S NON RESPONSE

43. On June 8, 2020, Strojnik sent a letter directly to Xenia's Chairman and Chief Executive Officer Marcel Verbaas, requesting explanation of Xenia's SEC and corporate disclosures and information. Exhibit 1.

44. In addition to request for clarification of Xenia's Misrepresentations, Strojnik also requested 28 C.F.R. 36.302(e)(1) information in his letter to Xenia's CEO Marcel Verbaas, stating:

> I am not only a shareholder in Xenia, I am also a veteran and immigrant disabled as defined in the 2008 ADA Amendment Act and 29 C.F.R. 36.105. In my retirement years I travel about. I intend to lodge at the following hotels in California:
>
> 1. Andaz San Diego,
> 2. Park Hyatt Aviara Resort,
> 3. Kimpton Canary Hotel Santa Barbara,
> 4. Marriott Napa Valley Hotel & Spa.
>
> I am also planning on several staycations in Phoenix, at the following locations:
>
> 1. Royal Palms Resort & Spa, The Unbound Collection by Hyatt
> 2. Hyatt Regency Scottsdale Resort & Spa
>
> I write you for information regarding accessibility at these hotels. I am interested in accessibility elements that relate in any manner to walking, standing, sitting, bending, sleeping, working, climbing stairs, kicking, jumping, twisting body, running, reaching, lifting, writing, working, twisting

the wrist, shoulder and elbows, grasping, pushing, opening doors, breathing, getting in and out of a car, working and other major life activities.

Even more importantly, I also need to know whether any elements relating to accessibility in the above referenced hotels are *not* ADA compliant. *See* 28 C.F.R. 36.302(e)(1)(ii):

(e) (1) *Reservations made by places of lodging.* A public accommodation that owns, leases (or leases to), or operates a place of lodging shall, with respect to reservations made by any means, including by telephone, in-person, or through a third party—

(i) Modify its policies, practices, or procedures to ensure that individuals with disabilities can make reservations for accessible guest rooms during the same hours and in the same manner as individuals who do not need accessible rooms;

(ii) **Identify and describe accessible features in the hotels and guest rooms offered through its reservations service in enough detail to reasonably permit individuals with disabilities to assess independently whether a given hotel or guest room meets his or her accessibility needs;**

(iii) Ensure that accessible guest rooms are held for use by individuals with disabilities until all other guest rooms of that type have been rented and the accessible room requested is the only remaining room of that type;

(iv) Reserve, upon request, accessible guest rooms or specific types of guest rooms and ensure that the guest rooms requested are blocked and removed from all reservations systems; and

(v) Guarantee that the specific accessible guest room reserved through its reservations service is held for the reserving customer, regardless of whether a specific room is held in response to reservations made by others.

I respect your knowledge of the ADA sufficiently to not copy you with the 28 C.F.R. 36 or the 2010 Standards for Accessibility Design. Obviously, since I like to make travel arrangements ahead of time, I request that you provide the requested information seasonably.

45. The above request for information was made with respect to reservations to be made at referenced hotels in Arizona and California.

12

46. Strojnik received a response from Xenia's lawyers, Latham & Watkins, refusing to provide requested information in violation of 28 C.F.R. 36.302(e). Exhibit 2.

**D. STROJNIK'S INDEPENDENT INVESTIGATION OF BOOKING WEBSITES AND HIS PERSONAL ENCOUNTER WITH BARRIERS TO ACCESSIBILITY THAT DETER HIM FROM VISITING XENIA PROPERTIES AND, IN PARTICULAR, PHOENIX PALMS AND SCOTTSDALE RANCH.**

47. Not having received a satisfactory answer from the lawyers for Xenia, Strojnik discovered, with respect to Phoenix Palms, the following in Table 2:

| 48. 28 C.F.R. 36.302(e)(1)(ii) |
| --- |
| **NO GENERAL ACCESSIBILITY INFORMATION ON BOOKING WEBSITE** |
| **NO ACCESSIBLE ROOMS** |

| < | **Member Rate** from $300 USD | **Standard Rate** from $309 USD | **Bed And Breakfast** from $339 USD | **Suite Experience** from $559 USD | > |
| --- | --- | --- | --- | --- | --- |

Hide Rate Rules ∧

**Details**
Regularly published room rates.

**Deposit Policy**
Credit Card Guarantee Required

**Cancellation Policy**
24HRS PRIOR TO CHECKIN TO AVOID 1NT FEE

**1 King Bed Casita**    $309
Avg/Night (USD)

Spread out in this bungalow style, 470-square-foot room with an individual outdoor entrance, offering a fireplace, large walk-in shower, and an exclusive terrace with lush garden views.

SELECT

**Room Amenities**

- 40" LCD TV
- Arcadia Orange bath amenities
- Robes and slippers
- Light-up vanity mirror
- Make-up mirror
- Mini-fridge
- Bose speaker docking station
- Keurig coffeemaker

Less Details ∧



**2 Double Beds with Patio**

Settle into this 500-square-foot room, featuring two double beds and a private terrace with stunning views of the Montavista Courtyard and pools.

**$369**
Avg/Night (USD)

SELECT

**Room Amenities**

- 40" LCD TV
- Individually controlled heat and air-conditioning
- Arcadia bath amenities
- Light-up vanity mirror
- Hair dryer
- Coffeemaker
- Minifridge
- Minibar
- Iron and ironing board
- Large in-room safe
- Daily newspaper upon request
- Crib upon request

Less Details ∧



**Mountain View Suite**

This spacious 800-square-foot corner suite comes with a plush king bed, queen sleeper sofa, deep soaking tub, and patio or balcony with stunning views. This is a premium suite. See World of Hyatt program terms for upgrade eligibility.

**$559**
Avg/Night (USD)

SELECT

**Room Amenities**

- 40" LCD TV
- Individually controlled heat and air-conditioning
- Arcadia bath amenities
- Light-up vanity mirror
- Hair dryer
- Coffeemaker
- Minifridge
- Minibar
- Iron and ironing board
- Large in-room safe
- Daily newspaper upon request
- Crib upon request

Less Details ∧

14



**Mountain View Spa Suite**

Settle into this suite with one king bedroom and enjoy a living room, additional queen sleeper sofa, semi-private terrace, and features like a steam shower and gas fireplace amid 600 square feet of space. This is a premium suite. See World of Hyatt program terms for upgrade eligibility.

**$559**
Avg/Night (USD)

[ SELECT ]

**Room Amenities**

- 40" LCD TV
- Individually controlled heat and air-conditioning
- Arcadia bath amenities
- Light-up vanity mirror
- Hair dryer
- Coffeemaker
- Minifridge
- Minibar
- Iron and ironing board
- Large in-room safe
- Daily newspaper upon request
- Crib upon request

Less Details ⌃

**PERSONALLY ENCOUNTERED BARRIERS**
**THIS PROPERTY IS SEVERELY AND DANGEROUSLY INACCESSIBLE.**
**A LIMITED LIST OF BARRIERS FOLLOWS.**



Identification.

15

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



**No access from street.**



**No marked passenger loading Zone.**

1
2
3
4
5
6
7
8
9
10
11



**Accessile parking too steep.**

12
13
14
15
16
17
18
19
20
21
22
23
24
25
26



**No vertical accessible parking signage.**

27
28

**Ramp too steep – no handrails.**



**Inaccessible to lobby.**

1
2
3
4
5
6
7
8
9
10
11
12



13 **Improperly configured handrails throughout.**
14
15
16
17
18
19
20
21
22
23
24
25
26



27 **Inaccessible check in counter – and no clear access space.**
28

**No ramp anywhere.**



**No ramp anywhere.**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



No curb ramp anywhere.



No handrails on ramp.

21

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



**No handrails on ramp.**



**No handrails on ramps anywhere.**



**Inaccessible to / from fountain area.**



**Improperly confgured handrails everywhere.**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



**Opening hardware on pool entry too high.**



**Inaccessible to Monte Vista Terrace**



**More improperly configured handails.**

**Date encountered:**  June 25, 2020.

**Table 2.**

49. Strojnik  is deterred from booking a room at  Phoenix Palms because the violations documented in Table 2 are directly related to his disabilities as determined by the application and use of common sense as suggested by the United States Supreme Court in *Ashcroft v. Iqbal,* 556 U.S. 662 (2009)

50. Not having received a satisfactory answer from the lawyers for Xenia, Strojnik discovered, with respect to Scottsdale Ranch, the following in Table 3:

| 51. 28 C.F.R. 36.302(e)(1)(ii) BOOKING INFORMATION |
|---|
| 52. https://www.reservations.com/hotel/hyatt-regency-scottsdale-resort-and-spa-at-gainey-ranch?rmcid=tophotels&utm_source=googleads&gclid=CjwKCAjwltH3BRB6Eiw Ahj0IUBbDO6MWuVodD7keWTL9yHaywp-K10ZrCWoH_YwjJ6mAmV1oHD5JBBoC6bAQAvD_BwE |
| |

25

**Accessibility**
- Wheelchair accessible - may have limitations
- Wheelchair Accessible bathroom
- In room accessibility

**General Amenities**
- Hotel Restaurant
- Wheelchair accessible parking
- Wheelchair-accessible concierge desk
- Wheelchair-accessible van parking
- Wheelchair-accessible registration desk
- Wheelchair-accessible pool
- Wheelchair-accessible meeting spaces/business center

If you are a person who needs an accessibility accommodation in order to utilize this Site and our Services, we offer certain assistance that may help. Please call our 24/7 Customer Call Center at 1800-916-4339.

## LACK OF DISPERSION

**224.5 Dispersion.** Guest rooms required to provide mobility features complying with 806.2 and guest rooms required to provide communication features complying with 806.3 shall be dispersed among the various classes of guest rooms, and shall provide choices of types of guest rooms, number of beds, and other amenities comparable to the choices provided to other guests. Where the minimum number of guest rooms required to comply with 806 is not sufficient to allow for complete dispersion, guest rooms shall be dispersed in the following priority: guest room type, number of beds, and amenities. At least one guest room required to provide mobility features complying with 806.2 shall also provide communication features complying with 806.3. Not more than 10 percent of guest rooms required to provide mobility features complying with 806.2 shall be used to satisfy the minimum number of guest rooms required to provide communication features complying with 806.3.

## OF 16 CATEGORIES OF ROOMS, ONLY 1 KING BED IS ACCESSIBLE

CHECK ROOM RATES

Click Here for Group Reservations (5+ Rooms)

**CHECK CURRENT ROOM RATES**

✦ Hurry! Other travelers are looking at this page right now.
Check standard prices, special rates & last minute deals

ROOM, 1 KING BED, ACCESSIBLE (SHOWER)
View room details and amenities
- 🛏 CHECK RATES
- ⊘ Check savings and offers!

ROOM, 1 KING BED, MOUNTAIN VIEW
View room details and amenities
- 🛏 CHECK RATES
- ⊘ Check savings and offers!

ROOM (2 QUEEN BEDS WITH SOFA BED)
View room details and amenities
- 🛏 CHECK RATES
- ⊘ Check savings and offers!

ROOM, 1 KING BED, ACCESSIBLE, BATHTUB
View room details and amenities
- 🛏 CHECK RATES
- ⊘ Check savings and offers!

SUITE (SIGNATURE)
View room details and amenities
Check savings and offers!
ROOM, 2 QUEEN BEDS, COURTYARD VIEW
View room details and amenities
Check savings and offers!
ROOM (FOUNTAIN COURT)
View room details and amenities
Check savings and offers!
ROOM, 1 KING BED, COURTYARD VIEW
View room details and amenities
Check savings and offers!
CLUB ROOM, 1 KING BED
View room details and amenities
Check savings and offers!
SUITE (HOSPITALITY)
View room details and amenities
Check savings and offers!
CLUB ROOM, 2 QUEEN BEDS
View room details and amenities
Check savings and offers!
ROOM, 2 QUEEN BEDS
View room details and amenities
Check savings and offers!
ROOM (CASITA)
View room details and amenities
Check savings and offers!
ROOM, 1 KING BED
View room details and amenities
Check savings and offers!
ROOM, 2 QUEEN BEDS, MOUNTAIN VIEW
View room details and amenities
Check savings and offers!
SUITE (PALM)
View room details and amenities
Check savings and offers!



1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**PERSONAL BARRIER ENCOUNTERS**



**Identification.**
**THIS PROPERTY IS SEVERELY AND DANGEROUSLY INACCESSIBLE.**
**A LIMITED LIST OF BARRIERS FOLLOWS.**



**No access from street.**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



**No marked passenger loading zone.**

**No accessible route to lobby although there is an attempt at a rampnet to the valet sation; however, the ramp is improperly configured with dangerously steep cross slope.**

1
2
3
4
5
6
7
8
9
10
11
12



**Inaccessible bar.**

13
14
15
16
17
18
19
20
21
22
23
24
25
26



**Inaccessible bar seating.**

27
28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



**Inaccessible upper level from bar.**

**Tne entire property lacks accessibility throughout.**

1
2
3
4
5
6
7
8
9
10
11
12



**Inaccessible route to pool.**

13
14
15
16
17
18
19
20
21
22
23
24
25
26
27



**Inaccessible pool bar - canno get to it cannot sit at it.**

28

32

1
2
3
4
5
6
7
8
9
10
11
12
13



**Inaccesible checin in counter.**

14
15
16
17
18
19
20
21
22
23
24
25



**"Accessible" parking spot inaccessible bu virtue of slope to steep.**

26
27
28

**Accessible parking signage too low throughout.**

**Ramp too steep – no handrails on ramp.**

| |
|---|
| **Date of Encounter:** May 25, 2020. |
| **Table 3.** |

53. Strojnik is deterred from booking a room at Scottsdale Ranch because the violations documented in Table 3 are directly related to his disabilities determined by the application and use of common sense as suggested by the United States Supreme Court in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)

## COUNT I - Common Law Fraud
Against Xenia and Scottsdale Ranch

54. Plaintiff realleges all allegations heretofore set forth.

55. Xenia and Scottsdale Ranch Misrepresentations documented above.

56. The Misrepresentations were false as documented above.

57. The Misrepresentations were material.

58. Xenia and Scottsdale Ranch knew that the Misrepresentations were false or were ignorant of their truth.

59. Xenia's and Scottsdale Ranch's intent in making Misrepresentations was that they be acted upon by purchasers of XHR stock, including Strojnik, or to lodge at Xenia-controlled properties.

60. Strojnik was ignorant of the falsity of Xenia's and Scottsdale Ranch's Misrepresentations.

61. Strojnik relied on the truth of Xenia's and Scottsdale Ranch's Misrepresentations.

62. Strojnik had the right to rely on Xenia's and Scottsdale Ranch's Misrepresentations.

63. Strojnik suffered a consequent and proximate injury as a result of Xenia's and Scottsdale Ranch's Misrepresentations in a monetary amount to be determined by the jury.

64. Xenia either intended to cause injury to Strojnik or consciously pursued a course of conduct knowing that created a substantial risk of significant harm to Strojnik and others similarly situated.

65. Defendant is liable to Plaintiff for punitive damages in an amount to be proven at trial sufficient, however, to deter Xenia and others similarly situated from pursuing similar acts, actions and inactions, which shall be no less than $250,000.00.

**COUNT II - Consumer Fraud**
(Xenia – Phoenix Palms – Scottsdale Ranch)

66. Plaintiff realleges all allegations heretofore set forth.

67. The Arizona Consumer Fraud Act ("ACFA") "makes it unlawful to use 'any deception, deceptive act or practice, fraud, false pretense, false promise, misrepresentation, or concealment, suppression or omission of any material fact' when selling or advertising merchandise."

68. XHR stock and Xenia's, Phoenix Palms' and Scottsdale Ranch's lodging services are "merchandise" as defined in A.R.S. § 44-1521.

69. Through their advertising and communications media, as defined in A.R.S. §44-1521, Xenia, Phoenix Palms and Scottsdale Ranch

   a. Made false Misrepresentations as stated above; and

   b. Concealed, suppressed and omitted to disclose

      a. The level of risk associated with its non-compliance with the ADA; and

      b. Information required to be disclosed pursuant to 28 C.F.R. 36.302(e)(1)(ii).

70. Strojnik has been injured by Xenia's, Phoenix Palms' and Scottsdale Ranch's Misrepresentations and omissions.

**COUNT III - Failure to Disclose**
(Xenia – Phoenix Palms – Scottsdale Ranch)

71. Plaintiff realleges all allegations heretofore set forth.

72. Xenia, Phoenix Palms and Scottsdale Ranch made Misrepresentations as stated above and concealed, suppressed and failed to disclose information they were required to disclose under the state and federal securities laws and 28 C.F.R. 36.302(e)(1)(ii), including,

   a. The level of risk associated with its non-compliance with the ADA; and

   b. Information required to be disclosed pursuant to 28 C.F.R. 36.302(e)(1)(ii).

73. Strojnik has been injured by Xenia's, Phoenix Palms' and Scottsdale Ranch's Failure to Disclose.

36

1

**COUNT IV – Fraudulent Concealment**
(Xenia – Phoenix Palms – Scottsdale Ranch)

2

3   74. Plaintiff realleges all allegations heretofore set forth.

4   75. Xenia, Phoenix Palms and Scottsdale Ranch concealed information there were

5   required to disclose pursuant to the disclosure requirements of state and federal

6   securities laws and 28 C.F.R. 36.302(e)(1)(ii), including

7        a.  The level of risk associated with its non-compliance with the ADA; and

8        b.  Information required to be disclosed pursuant to 28 C.F.R. 36.302(e)(1)(ii).

9   76. Strojnik has been damaged by Xenia's Fraudulent Concealment.

10

**COUNT V - Securities Fraud – Federal Law**
(Xenia only)

11

12   77. Plaintiff realleges all allegations heretofore set forth.

13   78. Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and Rule

     10b-5 thereunder, 17 C.F.R. § 240.10b-5, makes it unlawful for any person,

14

15   directly or indirectly, by the use of any means or instrumentality of interstate

     commerce, or of the mails or of any facility of any national securities exchange,

16

17        a)  To employ any device, scheme, or artifice to defraud,

18        b)  To make any untrue statement of a material fact or to omit to state a
            material fact necessary in order to make the statements made, in the light

19          of the circumstances under which they were made, not misleading, or

20        c)  To engage in any act, practice, or course of business which operates or
            would operate as a fraud or deceit upon any person,

21

22   in connection with the purchase or sale of any security.

23   79. Xenia made (1) a material Misrepresentation and omissions as stated above.

24   80. Xenia intended that Strojnik rely thereon, and Strojnik did so rely.

25   81. As a direct and proximate result of Xenia's Misrepresentations and omissions, Strojnik

26   (1) initially purchased XHR stock and was (2) subsequently unable to determine

     whether to purchase more XHR stock, divest of XHR stock or maintain ownership

27   status quo.

28

82. Strojnik suffered economic loss as a result of Xenia's securities fraud.

37

**COUNT VI - Securities Fraud – State Law**
(Xenia Only)

83. Plaintiff realleges all allegations heretofore set forth.

84. A.R.S. § 44-1991 makes it a fraudulent and unlawful for any person, in connection with a transaction or transactions within or from Arizona involving an offer to sell or buy securities, or a sale or purchase of securities, directly or indirectly, to:

   a) Employ any device, scheme or artifice to defraud,

   b) Make any untrue statement of material fact, or omit to state any material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or

   b) Engage in any transaction, practice or course of business which operates or would operate as a fraud or deceit,

in connection with the purchase of any security.

85. The elements of a securities fraud claim under the Arizona Securities Act, Arizona Revised Statute § 44-1991(A), are "almost identical" to its federal counterpart. Ariz. Rev. Stat. § 44-1991(A)(2) (stating that it is a fraud to "[m]ake any untrue statement of material fact, or omit to state any material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading"); *Grand v. Nacchio*, 236 P.3d 398, 400 (2010) (equating the federal and state law elements).

86. Strojnik realleges the allegations set forth in the previous count.

**COUNT VII - Americans with Disabilities Act**
(Xenia, Phoenix Palms, Scottsdale Ranch)

87. Plaintiff realleges all allegations heretofore set forth.

88. Xenia, Phoenix Palms and Scottsdale Ranch are public accommodation that own, lease (or lease to) or operate places of lodging including Phoenix Palms, Scottdale Ranch, Andaz San Diego, Park Hyatt Aviara Resort, Kimpton Canary Hotel Santa Barbara, and Marriott Napa Valley Hotel & Spa.

89. On or about June 8, 2020, Strojnik was making plans for traveling to California and spending time in the Phoenix area.

90. In connection with reservations, Strojnik contacted Xenia and requested that it provide Strojnik with information required to be disclosed pursuant to 28 C.F.R. 36.302(e)(1)(ii) which requires it to:

> Identify and describe accessible features in the hotels and guest rooms offered through its reservations service in enough detail to reasonably permit individuals with disabilities to assess independently whether a given hotel or guest room meets his or her accessibility needs.

Exhibit 1.

91. Xenia refused to provide this information. Exhibit 2.

92. Thereafter, Strojnik reviewed Defendant Phoenix Palms' and Scottsdale Ranch's booking websites and discovered that they too fail to comply with the disclosure requirements of the C.F.R., as fully documented in Tables 2 and 3 above.

93. Strojnik then personally visited and experienced barriers to accessibility as more fully photographically documented in Tables 2 and 3 above.

94. The ADA violations documented below relate to barriers to Plaintiff equal enjoyment of defendant's facility by virtue of the limitations of major life activities described in Table 1 above, that is, walking, standing, sitting, bending, sleeping, working, performing manual tasks, reaching, grasping, lifting, climbing, kicking, pushing, opening doors, twisting the wrist, shoulder and elbows, working or performing any physical activity whatsoever.

95. These barriers impair Strojnik full and equal access to Xenia properties, including Phoenix Palms and Scottsdale Ranch which, in turn, constitute discrimination satisfying the "injury in fact" requirement of Article III of the United States Constitution.

96. Plaintiff is deterred from visiting Xenia Properties, including Phoenix Palms and Scottsdale Ranch based on his knowledge that the properties are not ADA compliant as such non-compliance substantially interferes with Plaintiff's ability to perform major life activities as compared to most people in the general population. However, Plaintiff intends to return to the Hotel periodically to test them for ADA compliance.

Plaintiff's current intent is to return to the Hotel to lodge there or to test their accessibility within a year's time.

97. Plaintiff intends to visit the Hotel at a specific time when they become fully compliant with ADAAG; just as a disabled individual who intends to return to a noncompliant facility suffers an imminent injury from the facility's existing or imminently threatened noncompliance with the ADA, a plaintiff who is deterred from patronizing a hotel suffers the ongoing actual injury of lack of access to the Hotel.

98. The remediation of architectural barriers is readily achievable.

99. When Plaintiff prevails in this action, his injuries will be redressed.

## COUNT VIII - Common Law Negligence and Negligence per se
### (Xenia, Phoenix Palms and Scottsdale Ranch)

100. Plaintiff realleges all allegations heretofore set forth.

101. Xenia, Phoenix Palms and Scottsdale Ranch owed Strojnik a statutory duty to remove ADA accessibility barriers so that Strojnik as a disabled individual would have full and equal access to their public accommodations.

102. Defendants Xenia, Phoenix Palms and Scottsdale Ranch breached this duty.

103. As a direct and proximate result of Defendant's breach, Strojnik has been damaged in an amount to be proven at trial but in no event less than $35,000.00.

104. The ADA was enacted for the protection of persons with disabilities, including mobility related disabilities.

105. The ADA regulatory scheme was enacted for the safety of persona with disabilities.

106. Defendant's knowing and intentional discrimination against Plaintiff as described in 42 U.S.C. §12101(a)(1)-(b) and generally pursuant the ADA and 28 CFR 36 caused Plaintiff damage in the following non-exclusive fashions:

   a. Defendant's knowing and intentional discrimination has relegated Plaintiff to an inferior status in society, causing Plaintiff damage.

   b. Defendant's knowing and intentional unfair and unnecessary discrimination against Plaintiff demonstrates Defendant's knowing and intentional damage to Plaintiff.

c. Defendant's breach of duty caused Plaintiff damages including, without limitation, the feeling of segregation, discrimination, relegation to second class citizen status the pain, suffering and emotional damages inherent to discrimination and segregation and other damages to be proven at trial.

d. The ADA has been the law of the land since 1991, but Defendant engaged in a conscious action of a reprehensible character, that is, Defendant denied Plaintiff his civil rights, and caused him damage by virtue of segregation, discrimination, relegation to second class citizen status the pain, suffering and emotional damages inherent to discrimination and segregation and other damages to be proven at trial

107. By violating Plaintiff's civil rights, Defendant engaged in intentional, aggravated and outrageous conduct.

108. Defendant either intended to cause injury to Plaintiff or defendant consciously pursued a course of conduct knowing that it created a substantial risk of significant harm to Plaintiff.

109. Defendant is liable to Plaintiff for punitive damages in an amount to be proven at trial sufficient, however, to deter this Defendant and others similarly situated from pursuing similar acts, actions and inactions, which shall be no less than $250,000.00.

## REQUEST FOR RELIEF

**WHEREFORE,** Plaintiff requests relief as follows:

A. With respect to fraud Counts 1 through 6, for damages in an amount to be proven at trial, and for costs and taxable fees.

B. With respect to Counts 5 and 6,

    a. for injunctive relief requiring Xenia to correct all misrepresentations in its sales and advertising media, including SEC filings, and to state true and correct information; and

    b. For costs, fees, expenses and attorney's fees.

C. With respect to Count 7:

    a. Relief described in 42 U.S.C. §2000a – 3; and

    b. Relief described in 42 U.S.C. § 12188(a) and (b) and, particularly -

      i.   Injunctive relief order to Xenia to provide the information pursuant to 28 C.F.R. 36.302(e)(1)(ii) with respect to each of their properties advertised for lodging in the State of Arizona; and

      ii.  Injunctive relief ordering Defendants to make their places of lodging readily accessible to and usable by ALL individuals with disabilities; and

     iii.  Requiring the provision of an auxiliary aid or service, modification of a policy, or provision of alternative methods, to the extent required by Subchapter III of the ADA; and

  c.  Equitable nominal damages; and

  d.  All remedies provided for in 28 C.F.R. 36.501(a) and (b); and

  e.  Costs, expenses and attorney's fees for when and if Plaintiff hires lawyers.

D. With respect to fraud counts 1 through 6 and negligence count 8, for punitive damages in the amount of no less than $250,000.00. This demand is supported by the following factors:

  a.  Reprehensibility of Defendants' conduct; and

  b.  The severity of the harm likely to result, i.e. segregation of persons with disabilities; and

  c.  The actual segregation of Strojnik from the rest of the traveling public; and

  d.  The duration of the misconduct is over 30 years and

  e.  Defendants' were fully aware of their own illicit maintenance of hotels; and

  f.  The attempt to conceal it through SEC filings and online representations; and

  g.  Particularly where compensatory damages may be low, "the need for punishment or deterrence may be increased by reason of the very fact that the defendant will have no liability for compensatory damages". *Sanchez v. Clayton*, 117 N.M. 761, 767, 877 P.2d 567, 573 (1994) (citing to 1 Dan B. Dobbs, *Law of Remedies* § 3.11(10), at 515-16 (2d ed. 1993))).

E. With respect to Count 8, damages in the amount of no less than $35,000.00.

F. With respect to all counts, taxable costs.

G. With respect to counts 5, 6 and 7, for attorney's fees.

1     H. For any other relief susceptible of proof under the allegations hereinabove.

2     I.   For any other and further relief as the Court may deem just and proper.

3                       **REQUEST FOR TRIAL BY JURY**

4       Plaintiff respectfully requests a trial by jury in issues triable by a jury.

5       RESPECTFULLY SUBMITTED this 26th day of June, 2020

6                         **PETER STROJNIK**

8                         Peter Strojnik
                         Plaintiff

# EXHIBIT 1



# PETER STROJNIK

7847 NORTH CENTRAL AVE
PHOENIX, ARIZONA 85020
TELEPHONE: 602-524-6602
E-MAIL PS@STROJNIK.COM

June 8, 2020

Marcel Verbaas
Chairman and Chief Executive Officer
Xenia Hotels & Resorts, Inc.
200 S. Orange Avenue Suite 2700
Orlando, Florida 32801

     Re: *Request for Information*

Dear Mr. Verbaas:

I am a Xenia shareholder and a disabled individual. This is my third request for information.

In the requests dated May 11, and June 2, 2020, I asked for the following information: (1) Articles of Incorporation and Amendments, (2) Bylaws and Amendments, (3) Minutes of the meetings of the Board of Directors **and** minutes of any other meetings relating to Americans with Disabilities Act ("ADA"), (4) A list (with addresses) of shareholders, (5) A list of cases in which Xenia has been sued for violations of the ADA along with an accounting of moneys spent defending the action and remediating violations, (6) the policies and procedures required to be adopted pursuant to 28 C.F.R. 36.302 and (7) any formal or informal analysis of the cost of compliance with the ADA versus the cost of ADA litigation.

There has been no response. Xenia's lack of communications raises my skepticism of Xenia's commitment to full and robust disclosures. My wariness requires this third request for information and clarification of your SEC filings, particularly the 2019 10-K.

## A. XENIA'S 2019 DECEPTIVE 10-K REQUIRES EXPLANATIONS AND ADDITIONAL INFORMATION.

I purchased Xenia stock, in part, in reliance on Xenia's 2019 10-K where I found the following statement:

### *Americans with Disabilities Act*

Our hotels must comply with applicable provisions of the Americans with Disabilities Act (the "ADA"), to the extent that such hotels are "public accommodations" as defined by the ADA. The ADA may require removal of structural barriers to access by persons with disabilities in certain public areas of our hotels where such removal is readily achievable. We believe that our hotels are in substantial compliance with the ADA and that we will not be required to make substantial capital expenditures to address the requirements of the ADA. However, non-compliance with the ADA could result in imposition of fines or an award of damages to private litigants. The obligation to make readily achievable accommodations is an ongoing one, and we will continue to assess our hotels and to make alterations as appropriate in this respect.

### *Compliance or failure to comply with the Americans with Disabilities Act and other safety regulations and requirements could result in substantial costs.*

Under the Americans with Disabilities Act of 1990 and the Accessibility Guidelines promulgated thereunder, which we refer to collectively as the ADA, all public accommodations must meet various federal requirements related to access and use by disabled persons. Compliance with the ADA's requirements could require removal of access barriers, and non-compliance could result in the U.S. government imposing fines or in private litigants winning damages. Our hotels also are subject to various federal, state and local regulatory requirements, such as state and local fire and life safety requirements. If we fail to comply with these requirements, we could incur fines or private damage awards. We do not know whether existing requirements will change or whether compliance with future requirements would require significant unanticipated expenditures that would affect our cash flow and results of operations. If we incur substantial costs to comply with the ADA or other safety regulations and requirements, it could materially and adversely affect our revenues and profitability.

The above statements are unnecessarily vague and misleading. I request clarification as follows:

1. The reference to the Americans with Disabilities Act is deceptive because it does not also reference State disabilities laws many of which provide for statutory damages, *see, e.g.* California Unruh Civil Rights Act, Cal. Civ. Code §§51, 52 ($4,000 per violation) and Violation of the California Disabled Persons Act, Cal. Civ. Code §§54-54.3 ($1,000 per violation).

Why does Xenia fail to disclose the serious potential damages under state laws?

2. Is your reference to "[t]he ADA *may* require removal of structural barriers" a materially false or misleading statement since the ADA *does* require removal of structural barriers?

3. Is your reference to "removal of structural barriers to access by persons with disabilities" intentionally incomplete and deceptive since Xenia, as owner of places of lodging, *must* comply with ADA with respect to *nonstructural* barriers?

4. Is your reference to removal of barriers *where* the removal is readily achievable misleading because it suggests that there are some barriers to accessibility the removal of which is *not* readily achievable? The definition of "readily achievable" in the footnote[1] shows that the

_____

[1]

28 C.F.R. 36.104:

*Readily achievable* means easily accomplishable and able to be carried out without much difficulty or expense. In determining whether an action is readily achievable factors to be considered include—

(1) The nature and cost of the action needed under this part;

(2) The overall financial resources of the site or sites involved in the action; the number of persons employed at the site; the effect on expenses and resources; legitimate safety requirements that are necessary for safe operation, including crime prevention measures; or the impact otherwise of the action upon the operation of the site;

(3) The geographic separateness, and the administrative or fiscal relationship of the site or sites in question to any parent corporation or entity;

(4) If applicable, the overall financial resources of any parent corporation or entity; the overall size of the parent corporation or entity with respect to the number of its employees; the number, type, and location of its facilities; and

   information is strictly within Xenia's knowledge, and that you know which remediation is readily achievable.

5. Is the statement "[w]e believe[2] that our hotels are in substantial compliance with the ADA and that we will not be required to make substantial capital expenditures to address the requirements of the ADA" based on a set of objective facts, findings and conclusions, or is it an unsupported conclusion? If the statement is based on objective facts and data, please disclose such facts and data in order to make the statement not deceptive.

6. The statement that "[t]he obligation to make readily achievable accommodations is an ongoing one, and we will continue to assess our hotels and to make alterations as appropriate in this respect" suggests that you have and continue to assess your hotels for ADA accessibility. If this is true, please provide the findings and conclusions of Xenia's assessments.

The overall discussion of the compliance or non-compliance with the ADA and the potential of private or DOJ enforcement action does not disclose the management's analysis of the cost of ADA compliance versus the cost of litigation. This non-disclosure makes the 10-K deceptive. Please provide management's analysis of the cost of ADA compliance versus the costs of ADA litigation.

Lastly, there is no discussion of Xenia's CSR's, particularly in relation to the individuals with disabilities. There is no discussion regarding the impact of Xenia's CSR, or lack thereof, have or will have on the stock price.

## B. REQUEST FOR 28 C.F.R. 36.302(E)(1)(II) INFORMATION

I am not only a shareholder in Xenia, I am also a veteran and immigrant disabled as defined in the 2008 ADA Amendment Act and 29 C.F.R. 36.105. In my retirement years I travel about. I intend to lodge at the following hotels in California:

---

(5) If applicable, the type of operation or operations of any parent corporation or entity, including the composition, structure, and functions of the workforce of the parent corporation or entity.

[2] The verb "believe" as used here is a term of conclusion based on facts and data at your disposal. It is not an expression of a forward looking statement.

1. Andaz San Diego,
2. Park Hyatt Aviara Resort,
3. Kimpton Canary Hotel Santa Barbara,
4. Marriott Napa Valley Hotel & Spa.

I am also planning on several staycations in Phoenix, at the following locations:

1. Royal Palms Resort & Spa, The Unbound Collection by Hyatt
2. Hyatt Regency Scottsdale Resort & Spa

I write you for information regarding accessibility at these hotels. I am interested in accessibility elements that relate in any manner to walking, standing, sitting, bending, sleeping, working, climbing stairs, kicking, jumping, twisting body, running, reaching, lifting, writing, working, twisting the wrist, shoulder and elbows, grasping, pushing, opening doors, breathing, getting in and out of a car, working and other major life activities.

Even more importantly, I also need to know whether any elements relating to accessibility in the above referenced hotels are *not* ADA compliant. *See* 28 C.F.R. 36.302(e)(1)(ii):

> (e)  (1) *Reservations made by places of lodging.* A public accommodation that owns, leases (or leases to), or operates a place of lodging shall, with respect to reservations made by any means, including by telephone, in-person, or through a third party—
>
> (i)      Modify its policies, practices, or procedures to ensure that individuals with disabilities can make reservations for accessible guest rooms during the same hours and in the same manner as individuals who do not need accessible rooms;
>
> **(ii)      Identify and describe accessible features in the hotels and guest rooms offered through its reservations service in enough detail to reasonably permit individuals with disabilities to assess independently whether a given hotel or guest room meets his or her accessibility needs;**
>
> (iii)      Ensure that accessible guest rooms are held for use by individuals with disabilities until all other guest rooms of that type have been rented and the accessible room requested is the only remaining room of that type;

(iv)       Reserve, upon request, accessible guest rooms or specific types of guest rooms and ensure that the guest rooms requested are blocked and removed from all reservations systems; and

(v)       Guarantee that the specific accessible guest room reserved through its reservations service is held for the reserving customer, regardless of whether a specific room is held in response to reservations made by others.

I respect your knowledge of the ADA sufficiently to not copy you with the 28 C.F.R. 36 or the 2010 Standards for Accessibility Design. Obviously, since I like to make travel arrangements ahead of time, I request that you provide the requested information seasonably.

Please address my concerns at your earliest opportunity but in no event later than 10 calendar days from the date of this letter. If you wish to communicate further regarding this matter, please do so by e-mail.

Thank you in advance for your courtesy.

Sincerely,

Peter Strojnik

**END**

# EXHIBIT 2

**J. Christian Word**
Direct Dial: (202) 637-2223
christian.word@lw.com

# LATHAM&WATKINS LLP

555 Eleventh Street, N.W., Suite 1000
Washington, D.C. 20004-1304
Tel: +1.202.637.2200  Fax: +1.202.637.2201
www.lw.com

FIRM / AFFILIATE OFFICES

| | |
|---|---|
| Beijing | Moscow |
| Boston | Munich |
| Brussels | New York |
| Century City | Orange County |
| Chicago | Paris |
| Dubai | Riyadh |
| Düsseldorf | San Diego |
| Frankfurt | San Francisco |
| Hamburg | Seoul |
| Hong Kong | Shanghai |
| Houston | Silicon Valley |
| London | Singapore |
| Los Angeles | Tokyo |
| Madrid | Washington, D.C. |
| Milan | |

June 14, 2020

Peter Strojnik
7847 North Central Avenue
Phoenix, AZ  85020
PS@Strojnik.com

Re:   Request for Information

Dear Mr. Strojnik:

I write on behalf of my client Xenia Hotels & Resorts, Inc., and in response to your letter to Marcel Verbaas, dated June 8, 2020.  You letter states that it is your third request for information from Xenia, but Xenia did not receive any previous correspondence from you.

Among other things, your letter requests copies of Xenia's "Articles of Incorporation and Amendments" and "Bylaws and Amendments."  You can obtain these documents from the Investor Relations section of Xenia's website at https://investors.xeniareit.com/sec-filings/documents/default.aspx by accessing Xenia's latest Form 10-K, to which the documents are exhibits.  Your letter refers to Xenia's Form 10-K, so I expect that you will not have any difficulty accessing these documents.  If that is incorrect, please let me know if you would like us to send you paper copies.  Xenia will not provide the additional documents or information you request.

Finally, the statements in Xenia's Form 10-K that you identify are complete and accurate.  Thus, Xenia will not respond to your request for clarification.

Best Regards,

*J. Christian Word*

J. Christian Word
of Latham & Watkins